FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHEREE C.,[1]

          Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,[2]

          Defendant.

No.   4:20-cv-5172-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND AFFIRMING THE ALJ'S DECISION**

      Plaintiff Cheree C. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the consequential ALJ findings were explained, legitimate, and supported by substantial evidence, the Court denies Plaintiff's Motion for

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Ms. Kijakazi is the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

Summary Judgment, ECF No. 20; grants the Commissioner's Motion for Summary Judgment, ECF No. 21; and affirms the ALJ's decision.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

[7] *Id.* § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied. If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

Plaintiff filed a Title 16 application.[17] Her claim was denied initially and on reconsideration.[18] On request, an administrative hearing was held by video before ALJ Stewart Stallings, who took testimony from Plaintiff about her conditions and symptoms.[19] After the hearing, the ALJ issued a written decision denying Plaintiff's disability claim and finding:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 27, 2017, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: migraines, obesity, irritable bowel syndrome, bilateral patellar tendonitis, bilateral plantar fasciitis, dysmenorrhea and menometrorrhagia post-surgery, anxiety, depression, and degenerative disc disease cervical and lumbar.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform sedentary work with the following limitations:

---

[17] AR 187–202.

[18] AR 126–29, 133–35.

[19] AR 43–67.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

lift/carry 10 pounds frequently and less than 10 pounds occasionally, sit for up to 8/8 hours and stand/walk for no more than 2/8 hours, except the claimant can occasionally balance, stoop, kneel, and crouch but never crawl or climb ramps, stairs, ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold, pulmonary irritants (such as fumes, odors, dusts, gases and poor ventilation) and hazards; needs to work in a low stress job (defined as not requiring to work around or to cope with work related circumstances that could be dangerous to the worker or others), and can perform a job that does not require sales quotas, production pace, or critical concentration (defined as careful, exact evaluation and judgment).

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cashier II, office helper, and document preparer.[20]

When assessing the medical-opinion evidence, the ALJ found:

- the reviewing opinion of Matthew Comrie, Psy.D., persuasive.

- the treating opinion of Shannon Phipps, D.O. and the reviewing opinions of Mathew Comrie, Psy.D., and John Robinson, Ph.D., partially persuasive.

- the treating opinions of Hazel Gavino, M.D., and Catherine Schrijver, LMFTA, not persuasive.

---

[20] AR 14–34.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[21] AR 23–26.

[22] AR 1–6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

## IV.    Analysis

### A.    Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting her symptom reports. As the ALJ did not find Plaintiff was malingering, the ALJ was required to provide "specific, clear and convincing" reasons supported by substantial evidence for rejecting Plaintiff's symptom reports after considering the relevant factors.[31]

---

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (cleaned up).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[31] *See* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

At the hearing, Plaintiff testified that her conditions cause headaches, joint and back pain, swelling in her hands and feet, irritable bowel syndrome (IBS), and difficulties with concentrating, sleeping, and motivation.[32] As to her headaches, she testified that they cause pain, nausea, vomiting, sensitivity to light, and dizziness at least two full weeks out of every month and therefore she is unable to leave her house between 7–14 days each month. As to her fibromyalgia, she has pain in her joints, which impacts walking and use of her hands, and swelling in her hands and feet. As to her IBS, she testified it causes her pain and requires her to use the bathroom for extended periods. Furthermore, she testified that her pain affects her abilities to concentrate, stay on task, and sleep, causing resulting fatigue and low energy. Her depression and anxiety make it difficult to leave the house and has caused loss of interest in activities she otherwise enjoys.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments not entirely consistent with the objective medical evidence and other evidence, including her noncompliance with treatment, care of a young child and other activities, inconsistent statements, and conviction of disability.[33]

---

[32] AR 49–60.

[33] AR 23–26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    Objective Medical Evidence

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[34] Here, the ALJ found Plaintiff's reported symptoms inconsistent with the objective medical evidence because she did not seek regular treatment for her migraines from a neurologist and the physical and mental examinations were unremarkable compared to her complaints.

The first reason—that Plaintiff did not seek regular treatment from a neurologist—is supported by substantial evidence. While Plaintiff did report persistent headaches from April to November 2018, she only sought treatment from a neurologist once during the relevant period.[35] And while the record reflects Plaintiff reported suffering from migraines prior to April 2018 and that from April to July 2018 she was observed with mild pain or occipital tenderness, the medical records are devoid of observed debilitating headache symptoms.[36] Furthermore,

---

[34] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[35] *See* AR 321, 435–36, 670, 678, 776–77, 787, 1023, 1092.

[36] *Compare* AR 359–61, 366–67, 988–89 (March–May 2017: therapist applied suboccipital inhibitive distraction but did not note any pain, sensitivity, or other distress caused by a headache), *with* AR 670–73 (Nov. 2018: complaining of regular headaches but no observed sign of headache), *with* AR 748–54, 757–58, 776–77

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

after November 2018, Plaintiff reported to her treating providers that the Aimovig medication adequately treated her migraines.[37] The record also reflects that Plaintiff was observed multitasking with her son during a therapy session indicating, as the ALJ found, that Plaintiff's concentration was not as limited as she claimed.[38] Substantial evidence supports the ALJ's finding that the objective medical evidence was inconsistent with Plaintiff's symptom reports.

As to Plaintiff's reported physical symptoms, the ALJ discounted them because they were out of proportion with the physical examinations, which were largely unremarkable compared to her symptom reports. This finding is supported by substantial evidence. The ALJ accurately highlighted that the feet, ankle, knee, and hand x-rays were either negative or only showed mild conditions, that the cervical MRI showed minimal and moderate conditions, and the medical records routinely indicated normal muscle tone, muscle strength, and reflexes.[39] Although

---

(April–July 2018) (reporting headache and being observed with mild pain and tender greater occipital nerves).

[37] *See* AR 359, 361, 990, 1031–32, 1061, 1092, 670, 800, 809, 812. *See also* AR 780–82.

[38] AR 645.

[39] AR 518–19 (normal x-ray of right ankle); AR 502–03 (normal left foot x-ray, after dropping water bottle on left foot, other than subtle swelling over the dorsal distal left foot and subtle superior calcaneal spur); AR 1016–17 (normal bilateral knee x-

the medical records are fairly evenly split between noting that Plaintiff's gait is antalgic or normal and Plaintiff was often observed with tenderness in her bilateral cervical or lumbar area and restricted lumbar motion, these conditions did not result in more than observed mild pain or discomfort. [40] And as the ALJ noted,

_____

ray); AR 828 (normal thoracic spine x-ray); AR 1126 (normal bilateral hand x-ray); AR 1128 (normal chest/abdomen x-ray other than moderate amount of stool); AR 497–98 (cervical x-ray revealing mild spinal canal stenosis and minimal bilateral neural foraminal stenosis at C4–5 and central disc herniation/protrusion causing moderate thecal sac narrowing centrally and minimal left foraminal stenosis at C5–6).

[40] *Compare* records revealing antalgic gait, AR 726 (Nov. 2017), AR 730 (Dec. 2017), AR 735 (Jan. 2018), AR 740 (Feb. 2018), AR 749 (April 2018), AR 754 (May 2018), AR 758 (June 2018), AR 777 (July 2018); AR 785 (Aug. 2018); AR 788 (Sept. 2018); AR 792 (Oct. 2018); AR 796 (Nov. 2018); AR 800 (Dec. 2018), *with* AR 605 (Apr. 2017: normal gait and range of motion with tender bilateral lumbar), AR 694, 702 (May–June 2017: normal gait); AR 707 (July 2017: normal gait although in mild pain); AR 712, 716, 721 (Aug.–Oct. 2017: normal gait although lumbar extension causes pain and seems to be in mild pain); AR 1016 (Oct. 2017: normal gait); AR 1046 (Jan. 2018: normal gait); AR 685 (June 2018: normal gait, muscle tone, strength, and reflexes); AR 891 (Sept. 2018: no gait limitations); AR 681 (Nov. 2018: normal gait); Nov. 672–73 (Nov. 2018: normal motor exam, sensation,

Plaintiff retained full lower and upper extremity strength, reflexes, and tone. The ALJ rationally found Plaintiff's physical symptom reports out of proportion to her observed physical limitations. Moreover, consistent with Plaintiff's lumbar and cervical limitations, the ALJ's crafted RFC restricted Plaintiff to sedentary work and imposed lifting and postural limitations.

As to Plaintiff's reported mental health symptoms of poor memory, concentration, ability to process information, and low energy, the ALJ highlighted that the medical record largely included normal mental status findings with normal thought process, attention span/concentration, mood, and affect. This finding is supported by substantial evidence, as even on the limited occasions that Plaintiff was observed to be anxious and/or depressed, her thought process, judgment, insight, attitude, and concentration were normal.[41]  Plus, as the ALJ

---

reflexes, coordination, gait, and station); AR 809, 812 (Jan.–Feb. 2019: normal gait although seems to be in mild pain); AR 875 (March 2019: normal motor strength and tone, no tenderness, and normal movement of all extremities).

[41] *See* AR 694, 986, 707, 712 (May–Aug. 2017: normal mood, affect, judgment, thought content, behavior although at times seems to be in mild pain); AR 640–42 (June 2017: anxious and depressed with average eye contact, cooperative attitude, full affect); AR 685 (June 2018: appropriate affect and demeanor, intact recent and remote memory, and good insight and judgment); AR 890 (Sept. 2018: anxious); AR 673 (Nov. 2018: normal attention span, thought process, judgment, insight, mood,

noted, the treatment notes indicate that Plaintiff's pain and mental health impairments did not affect her ability to multi-task.[42]

### 2.   Noncompliance with Treatment

The ALJ discounted Plaintiff's reported symptoms because she did not consistently engage in physical therapy or mental-health counseling and her use of medication was inconsistent with prescribed orders. Inadequately explained noncompliance with medical care can cast doubt on a claimant's subjective complaints.[43]

Specifically, as to Plaintiff's reported foot and knee pain, the ALJ discounted these symptoms because Plaintiff did not comply with the conservative treatment of performing recommended stretches, and Plaintiff did not follow through with

_____

and affect); AR 681 (Nov. 2018: normal affect and demeanor and good insight and judgment). *See also* physical records related to pain symptoms: AR 999–1000 (June 2017: negative for confusion, decreased concentration, agitation, and anxiety although there was mild diffuse tenderness to the abdomen; judgment, thought content, mood, affect, and behavior normal); AR 1002–05 (Aug. 2017: negative for agitation, decreased concentration, anxiety, and headaches, although positive for joint swelling); AR 1015 (Oct. 2017: negative for decreased concentration and anxiety).

[42] AR 645.

[43] 20 C.F.R. 416.929(c)(3)(v); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

physical therapy appointments for her knees.[44] That Plaintiff did not comply with such treatment was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's reported symptoms related to her foot and knee pain.

As to Plaintiff's anxiety and depression, the ALJ highlighted that Plaintiff attended only five counseling sessions and then failed to return despite efforts to contact her. The ALJ therefore found "[i]t is possible that she did not seek further mental health treatment because her symptoms were not bad."[45] First, Plaintiff argues the ALJ's finding is erroneous because it is speculative and fails to account for the possibility that Plaintiff's cessation of counseling was due to her anxiety and depression. The ALJ's "possible" sentence must be read in its full paragraph, which highlighted that Plaintiff's mental status findings were generally normal, she failed to return to counseling after five sessions despite repeated efforts to contact her, and treatment notes indicated good control of her dysthymia with medication. The ALJ's finding that Plaintiff's reported debilitating depression and anxiety were inconsistent with the prevailing objective medical records, which—as discussed above—routinely noted that Plaintiff's attention and concentration were normal, even on the few occasions she was noted as anxious and depressed, is supported by substantial evidence.

---

[44] AR 1079–80.

[45] AR 25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Second, Plaintiff argues the ALJ failed to consider that she ceased attending counseling because of her anxiety and depression. Yet, the record reflects that not only did Plaintiff appreciate that she was anxious and depressed when she declined to attend mental-health treatment but also that, at the same time, she was regularly attending her appointments for her physical conditions.[46] Plaintiff's argument that her anxiety and depression kept her from attending mental-health appointments is not supported by the record. Moreover, the record supports the ALJ's decision to discount the severity of Plaintiff's reported mental-health symptoms because she did not seek consistent counseling. Plaintiff started mental-health counseling three times and each time only continued for a limited duration. For instance, on one occasion she failed to return to counseling after she was told that paperwork for benefits would not yet be completed as she was new to treatment. On another occasion, she immediately ceased counseling once benefits paperwork was completed.[47]

---

[46] *See, e.g.*, AR 932–39, 983–84.

[47] *See* AR 633–34 (noting that mental health therapy was cancelled after Plaintiff failed to reshow after only three sessions); AR 928, 950–51 (mentioning that DSHS paperwork was returned unprepared because she was new to services, and she was subsequently discharged from treatment because she did not attend treatment after that session); AR 932, 940, 983 (discharged from treatment after entering services and participating in five sessions).

Lastly, the ALJ found that Plaintiff did not comply with prescribed medication, highlighting that on occasion Plaintiff's urine drug screen was inconsistent with prescribed therapies. There are several medical records that note aberrant prescription behavior because Plaintiff's urine drug screen was positive for Butalbital. However, Plaintiff was prescribed a medication by her primary care provider that contained Butalbital.[48] Consistent with this prescription, subsequent medical records reflect "no [prior] aberrant behavior noted" and that the prior urine drug screens were "consistent" with prescribed treatment.[49] As a result, the ALJ's offered "aberrant behavior" reason is not supported by substantial evidence. Nonetheless, the ALJ offered other clear and convincing reasons to discount Plaintiff's reported symptoms and therefore this error is harmless.[50]

### 3.    Inconsistent Activities

The ALJ found the severity of Plaintiff's reported symptoms inconsistent with her care of her young son, who has special needs.[51] Activities of daily living bear on a claimant's symptom reports if the level of activity is inconsistent with the

---

[48] *See, e.g.*, AR 700, 783, 757, 752.

[49] AR 795, 799, 907.

[50] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

[51] AR 25.

individual's claimed limitations.[52] For instance, the ability to care for others without help has been considered an activity that may undermine claims of disabling pain.[53] However, if the care activities are to serve as a basis for the ALJ to discredit the claimant's symptom reports, the record must identify the nature, scope, and duration of the care involved, and this care must be "hands on" rather than a "one-off" care activity.[54]

Here, the record reflects that Plaintiff is the sole care provider for her young son and therefore provides "hands on" care.[55] The record also reflects that, in addition to the typical daily child care responsibilities, Plaintiff brought him to appointments with her, interacted with him at appointments, carried him

---

[52] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[53] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[54] *Trevizo v. Berryhill*, 871 F.3d 664, 675–76 (9th Cir. 2017).

[55] *See* AR 59–60 (testifying that she lives alone with her 4-year-old son); AR 285 (reporting that she closely monitors her use of prescribed pain medicine so that she can fully care for her son safely); AR 305 (sharing that finding a babysitter for her son may be difficult); AR 327 (reporting she "does care for a young son which keeps her busy and active"); AR 330 ("She does stay very busy caring for her young son."); AR 1018 (reporting that she carries her 26-pound son frequently throughout the day); AR 1076 (advising that she changes her son's diapers and feeds him). *But see* AR 379 (stating that she is "limited with activities she can do with her young son").

frequently, danced with him, took him to the park, and took him to his medical appointments.[56]  Although as Plaintiff points out, childcare responsibilities are not always easily transferrable to a work environment and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,"[57] it was not irrational on this record for the ALJ to find Plaintiff's care of her young son inconsistent with her reported debilitating physical and mental symptoms. The ALJ's finding is supported by substantial evidence and this was a clear and convincing reason to discount Plaintiff's symptoms.[58]

---

[56] AR 330 (staying very busy with her son); AR 361, 608 (taking son to medical appointments in Seattle); AR 630, 645, 862 (bringing son with her to appointments); AR 313, 430, 439 (dancing with son at home); AR 983 (crafting with son); AR 628 (going to the park several times with her son); AR 1018 (carrying son frequently).

[57] *Reddick*, 157 F.3d at 722 (cleaned up).

[58] The ALJ also relied on the inconsistency between Plaintiff's reports that she has difficulty walking, opening/closing her hands, and with swelling in her hands and feet, and her failure to report—or be observed with—any physical joint pain, abnormal range of motion, or weakness when seeking treatment for a foot sliver after working in her yard. AR 1081–83. Because the Court finds the ALJ rationally found that Plaintiff's consistent daily care for her child was inconsistent with her

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    4.    <u>Inconsistent Statements</u>

The ALJ highlighted that Plaintiff's testimony about her gastrointestinal symptoms and headaches were inconsistent with her reports to treating providers.[59] An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[60] But the ALJ must be mindful as to whether a claimant's conflicting symptom reports or exaggerated symptoms were caused by the claimant's impairments.[61]

As to Plaintiff's gastrointestinal pain, constipation, and diarrhea related to her IBS, she testified that she must use the restroom for long periods of time. The ALJ suggests that the record showed very few complaints about treatment for IBS symptoms, other than treatment notes showing her constipation was stable on medication. Yet the medical record reflects that Plaintiff reported and sought treatment fairly consistently for her gastrointestinal issues, which was primarily

---

reported symptoms, the Court need not address the legitimacy of relying on this one-time yard-work reference.

[59] AR 26.

[60] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[61] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

constipation.[62] Nonetheless, there is no mention in the medical records that Plaintiff reported that her chronic gastrointestinal issues caused her to spend long periods of time in the restroom or that they caused her such ongoing pain or discomfort that her ability to work would be impacted. Moreover, there is substantial evidence supporting the ALJ's finding that Plaintiff's reported gastrointestinal symptoms were fairly stable on medication considering that any observed abdominal pain was associated with only mild tenderness.[63]

As to Plaintiff's headaches, Plaintiff testified that she has headaches two full weeks every month, but the ALJ found the medical record was largely devoid of

---

[62] AR 362–64 (reporting that her stool frequency is 2–3 times per week with associated symptoms of abdominal pain, back pain, and nausea); AR 389 (reporting "intermittent GI issues of constipation and diarrhea which she feels is stress-related); AR 441 (mild diffuse abdominal tenderness); AR 596 (recommending a diary of her bowel symptoms); AR 890, 1117 (soft, non-tender abdomen with normal bowel sounds); AR 985 (reporting medication for constipation caused severe diarrhea and so only took it once, with mild diffuse abdominal tenderness), AR 1045, 1089 (soft, non-tender, non-distended); AR 1061 (reporting one stool per week and seeking to get her back on the medication that has helped her the most with constipation); AR 1128 (x-ray revealing moderate amount of stool in colon).

[63] *Compare* AR 996, 1000, 1099 (mild abdominal tenderness) *with* AR 1062 (no abdominal tenderness).

headache complaints or treatment. Although there is evidence that Plaintiff did complain of headaches and seek treatment for such, substantial evidence supports the ALJ's finding that Plaintiff's testimony that she has headaches for two weeks each month is inconsistent with her reports to her treatment providers over the course of the relevant disability period. For instance, while Plaintiff reported increased migraines from April to November 2018, the record reflects minimal migraine reports prior thereto and by December 2018 Plaintiff reported that her migraines benefitted from Aimovig and her medication regiment was providing adequate relief.[64] And as noted above, even when Plaintiff was observed with occipital tenderness or pain, it was mild.

---

[64] *See, e.g.*, AR 990 (May 2017: reporting a migraine four days after last physical therapy session); AR 1031 (Jan. 2018: assessing whether poor sleep may be contributing to migraines); AR 1061 (Feb. 2018: noting that migraines are stable and that if she feels better in general her migraines may be minimized without additional medication); AR 1092 (May 2018: reporting more frequent migraines and desiring to see a different neurologist); AR 776–77 (July 2018: reporting headaches every day accompanied with nausea and light sensitivity; Floricet was discontinued as it was causing Plaintiff's rebound headache; given information about Aimovig); AR 780–783 (Aug. 2018: bilateral greater occipital nerve block performed and waiting for Aimovig from pharmacy); AR 787 (Sept. 2019: Aimovig is helping slightly and discussed potential for Botox to treat migraines if needed);

1

2    Accordingly, the ALJ's decision to discount Plaintiff's reported symptoms

about her IBS and headaches is supported by substantial evidence. This was a

3    clear and convincing reason to discount these reported symptoms.

4    5.    Improper Disability Motivation

5    The ALJ also found "there appears to be a conviction of disability. . . , which

6    can affect one's motivation to improve."[65] An ALJ may consider whether the

7    claimant has not worked for reasons unrelated to the alleged disability and

8    whether there is a tendency to exaggerate or engage in conduct to manipulate the

9    disability-determination process.[66]

10    Here, the ALJ highlighted a hospital record wherein Plaintiff became

11    agitated when the care provider informed her that her reported tender neck,

12    anxiety, lightheadedness, headaches, pain, and numbness in her bilateral hands

13    and feet would not require diagnostic testing because they were ongoing and

14    benign, and then after demanding such testing, Plaintiff left the hospital before the

15

16    _____

17    AR 670 (Nov. 2018: reporting chronic daily headache in late afternoon or evening);

18    AR 678 (Nov. 2018: reporting daily headaches); AR 800 (Dec. 2018: reporting that

migraines benefit from Aimovig, which provides adequate relief); AR 809 (Jan.

19    2019: same); AR 812 (Feb. 2019: same).

20    [65] AR 26.

21    [66]  20 C.F.R. §  416.929 (work record can be considered in assessing reported

22    symptoms). *See Smolen*, 80 F.3d at 1284.

23

requested testing was completed.[67] The ALJ also highlighted that, even before the alleged onset date, Plaintiff's earning records indicate minimal income, thereby suggesting that factors other than her alleged impairments are the cause of her not working fulltime.[68]

To counter the ALJ's conviction-of-disability finding, Plaintiff argues that her statement to a provider that she hoped to return to some type of employment undermines the ALJ's finding. Plaintiff made this hopeful-return-to-work statement during a 2015 treatment session wherein she asked the provider to complete paperwork to support her prior disability application.[69] In this setting, this "future employment" statement is not inconsistent with the ALJ's conviction-of-disability finding. Moreover, even without considering the years that Plaintiff was in college, the time period involved in the prior alleged disability period, and the time period immediately following her son's birth, the ALJ rationally found that Plaintiff's work history is sparse. This sparse work history, along with the noted exchange during the September 2018 emergency room visit and the remainder of the record, provides substantial evidence to support the ALJ's finding that Plaintiff's motivation to work is impacted by her conviction of disability. This

---

[67] AR 890–91.

[68] AR 207.

[69] AR 285.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 23

1    was a clear and convincing reason to discount Plaintiff's reported disabling

2    symptoms.

3    **B.    Medical Opinions: Plaintiff fails to establish consequential error.**

4        Plaintiff argues the ALJ improperly rejected the opinions of Dr. Gavino,

5    Ms. Schrijver, and Dr. Phipps.

6        1.    <u>Standard</u>

7        The parties disagree over whether Ninth Circuit "clear and convincing" and

8    "specific and legitimate" case law standards for weighing medical opinions continue

9    to apply considering the amended agency regulations pertaining to medical

10   opinions.[70] The Court is to defer to new agency regulations unless the prior judicial

11   "construction follows from the unambiguous terms of the statute and thus leaves

12   no room for agency discretion."[71] Because the Social Security Administration

13   remains the interpreter (within the limits of reason) of Title 16 and there is no

14   binding precedent finding that the prior judicial construction followed from the

15   unambiguous terms of Title 16, the Court's analysis is governed by the new

16   regulations, as well as the Administrative Procedure Act's (APA) requirement that

17   agency decisions include a statement of "findings and conclusions, and the reasons

18

19   _____

20   [70] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

20   168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.

21   [71] *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981–82

22   (2005); *see Schisler v. Sullivan*, 3 F.3d 563, 567–58 (2d Cir. 1993).

23

1    or basis therefore, on all the material issues of fact, law, or discretion presented on

2    the record."[72]

3        Therefore, as required by the new regulations and APA, the ALJ was

4    required to explain his reasoning with specific reference as to how he considered

5    the supportability and consistency factors when considering the medical opinions,

6    and his analysis must be supported by substantial evidence and free from legal

7    error.[73]

8        2.    Dr. Gavino

9        Dr. Gavino treated Plaintiff in October 2018 and May 2019, completing

10    forms regarding Plaintiff's physical limitations, wherein she diagnosed Plaintiff

11    with breast cancer in remission, exercise-induced asthma, fibromyalgia, IBS,

12    depression, dysmenorrhea, endometriosis, migraine headaches, allergic rhinitis,

13    chronic pain, left wrist carpal tunnel, and bulging neck pain.[74]

14        In October 2018, Dr. Gavino opined that Plaintiff could work only 1–10

15    hours a week, is unable to lift heavy objects, is unable to sit/stand for prolonged

16

17    _____

    [72] 5 U.S.C. 557(c)(A).

18

19    [73] *Id.* §§ 416.920c(c)(1)–(5), 416.920c(b)(2); *Ford v. Saul*, 950 F.3d 1141, 1153–54

20    (9th Cir. 2020); Nevertheless, it is not clear that the Court's analysis in this matter

21    would differ in any significant respect under the standards set forth in *Lester v.

    Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

22    [74] AR 970–72, 979–82.

23

periods of time, is unable to bend over/reach above, is unable to concentrate for extended periods of time, is unable to make repetitive motions with her upper extremity, is unable to tolerate exposure to chemicals or synthetic materials, is limited to sedentary work defined as lifting 10 pounds maximum and frequently lifting or carrying small articles and sitting, walking, or standing for brief periods, and that she has problems making and keeping appointments and using transportation.[75]

In May 2019, Dr. Gavino opined that Plaintiff needs to lie down at least one hour a day because of her back pain and fibromyalgia; her medications can cause fatigue, dizziness, drowsiness, and mood instability; work on a regular and continuous basis would cause her condition to deteriorate; she can perform postural activities only occasionally; she can use her right and left upper extremities only occasionally; during an 8-hour workday she needs to rotate positions about every 15 to 20 minutes, stand/walk less than 2 hours, and sit 2 hours; she is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; she will be off task more than 50 percent of the day (per Plaintiff's report); she will miss more than 4 days of work per month; and she is unable to concentrate for extended periods of time.[76]

---

[75] AR 970–72.

[76] AR 970–71, 979–82.

1

2

3

     The ALJ found Dr. Gavino's 2018 opinion partially persuasive and 2019 opinion not persuasive.[77] Plaintiff argues the ALJ erred for several reasons. The ALJ's reasons are addressed.

4

5

6

7

8

9

10

11

12

13

14

     First, as to Dr. Gavino's opinions that Plaintiff is limited to sedentary work and is capable of working only 1–10 hours a week, the ALJ discounted them because the medical record contained only mild to moderate objective physical findings and the opinions are inconsistent with Plaintiff's ability to be the primary care provider for a young child. Whether the opinion is consistent with the evidence from other medical sources and nonmedical sources is a critical factor.[78] Here, the ALJ's finding that the mild to moderate objective findings are inconsistent with Dr. Gavino's opined sedentary-work and work-hour limitations is supported by substantial evidence. The hand, feet, knee, thoracic spine, and abdomen x-rays were either normal or revealed only mild conditions.[79] Although the x-ray of the cervical spine revealed mild to moderate conditions, and she was often observed

15

16

17

[77] AR 27.

18

[78]  20 C.F.R. § 416.920c(b)(2), (c)(2).

19

20

21

22

23

[79] AR 518–19 (normal x-ray of right ankle); AR 502–03 (normal left foot x-ray other than subtle swelling over the dorsal distal left foot and subtle superior calcaneal spur); AR 1016–17 (normal bilateral knee x-ray); AR 828 (normal thoracic spine x-ray); AR 1126 (normal bilateral hand x-ray); AR 1128 (normal chest/abdomen x-ray other than moderate amount of stool).

with an antalgic gait and tenderness in her spine, she was also just as often observed with a normal gait and no tenderness, and the medical records consistently show normal muscle strength and tone.[80] In addition, the record reflects that Plaintiff was the sole care provider for her young son, providing daily "hands on" care, including frequently carrying him, changing diapers, feeding him, and arranging and driving him to his medical appointments. Substantial evidence supports the ALJ's finding that Plaintiff's care for her young son is inconsistent with Dr. Gavino's opined severe physical and mental limitations. Even though, in contrast to work demands, a parent caring for a young child at home generally can take breaks or rest at non-typical work break periods,[81] there is substantial evidence in the record supporting the ALJ's finding that Plaintiff's care for her young son was inconsistent with Dr. Gavino's severe limitations. These are legitimate reasons supported by substantial evidence to find Dr. Gavino's opinions inconsistent with the record.

Second, the ALJ discounted Dr. Gavino's 2018 opinion because treatment notes did not reflect that Plaintiff consistently complained of headaches, hand pain,

---

[80] AR 497–98 (cervical x-ray revealing mild spinal canal stenosis and minimal bilateral neural foraminal stenosis at C4–5 and central disc herniation/protrusion causing moderate thecal sac narrowing centrally and minimal left foraminal stenosis at C5–6).

[81] *Fair*, 885 F.2d at 603.

IBS, plantar fasciitis, menorrhagia, or dysmenorrhea. Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms or the medical findings and observations—is a factor for the ALJ to consider.[82] Plaintiff accurately points out that she endorsed symptoms of at least one of these impairments during nearly every "review of systems" documented in the record. However, even though Plaintiff endorsed these symptoms, the ALJ's finding that the largely normal to mild objective findings in the medical record do not support the endorsed symptoms is supported by substantial evidence. For instance, the medical record reflects that Plaintiff's headaches were not observed to be severe, as she was only seen with mild pain, tenderness, or discomfort.[83] Moreover, the record reflects that her headaches were ultimately adequately treated with medication.

As to hand pain, the hand x-rays were normal, there was no noted weakness in her hand strength, reduced range of motion, or reduced reflexes. As to Plaintiff's IBS, although Plaintiff fairly consistently sought treatment for IBS, the ALJ

---

[82] 20 C.F.R. § 416.920c(b)(2).

[83] *See* AR 990, 1031, 1061, 1092, 670, 800, 809, 812. *See also* AR 359–61, 366–67, 988–89 (noting the therapist applied suboccipital inhibitive distraction but did not note any pain, sensitivity, or other distress caused by a headache); AR 670–73 (complaining of regular headaches but no observed sign of headache); AR 748–54, 757–58, 776–77 (April–July 2018) (reporting headache and being observed with mild pain and tender greater occipital nerves).

rationally found the reported and observed gastrointestinal symptoms were not consistent with the need to perform sedentary work or work only 1–10 hours of the week.[84] As to Plaintiff's plantar fasciitis, when she sought treatment in May 2017 and February 2018 for foot pain, the physical exams were normal except for mild infracalcaneal tenderness to the bilateral heel, and the provider recommended conservative treatment, including orthotics and stretches.[85] The ALJ's finding that Dr. Gavino's severe opinions were inconsistent with the medical record related to Plaintiff's hands, IBS, and feet is supported by substantial evidence.

As to Plaintiff's menorrhagia and dysmenorrhea, she regularly reported painful periods. However, as the ALJ highlighted, Plaintiff had a hysteroscopy, dilation, and curettage in January 2018.[86] The findings were benign and revealed only an enlarged uterus. By May 2018, these conditions were stable. Substantial evidence supports the ALJ's finding that the medical records did not indicate that Plaintiff suffered pain resulting from her menorrhagia and dysmenorrhea to an extent consistent with Dr. Gavino's severe limitations.[87]

---

[84] *See, e.g.*, AR 362–64, 389, 441, 596, 890, 1117, 985, 1045, 1089, 1061, 1128.

[85] AR 992–93, 1063–64.

[86] AR 735–42.

[87] *See* AR 748–54, 757–58, 776–77 (April–July 2018) (reporting headache and being observed with mild pain and tender greater occipital nerves); AR 694, 702, 707,

Third, the ALJ discounted Dr. Gavino's opinions because her neck and back pain were controlled with treatment. As discussed previously, Plaintiff was often observed to be in mild pain with tenderness to her occipital nerve, lumbar musculature, or abdomen, and with an antalgic gait; however, she was more often observed with a normal gait and routinely had normal upper and lower body strength and muscle tone. On this conflicting record, the ALJ's finding that Dr. Gavino's severe opinion is inconsistent with the observed minor neck and back pain is supported by substantial evidence.

Fourth, the ALJ found Dr. Gavino's 2019 opinion not persuasive because there was no basis for the opinion that Plaintiff would miss four days or more of work per week, particularly as the objective evidence indicated no significant problems with attention span, concentration, and persistence and the opinion may have been based solely on Plaintiff's self-report. Regardless of whether Dr. Gavino's absenteeism opinion was based on more than Plaintiff's self-reports, the ALJ reasonably determined that the objective evidence did not indicate such severe problems with attention span, concentration, and persistence.[88]

And contrary to Plaintiff's argument that she is likely to be absent from work because of the pain caused by her impairments and the medication side

---

800, 809, 812, 712, 716 (May–Sept. 2017, Dec. 2018–Feb. 2019) (observed to be in mild pain).

[88] AR 640–42, 673, 681, 685, 694, 707, 712, 890, 986.

effects of fatigue, dizziness, and mood instability, the medical record does not support such disabling pain or medication side-effects. As mentioned above, the observed mild pain and lumbar tenderness do not support Dr. Gavino's absenteeism opinion. Moreover, Dr. Gavino's statement that some of Plaintiff's medications can cause fatigue, dizziness, drowsiness, and mood is inconsistent with Plaintiff's reports to treatment providers, as highlighted by the ALJ, wherein Plaintiff routinely reported either no medication side-effects or that side-effects were limited to constipation, nausea, and vomiting, and these were not reported to an extent consistent with the need to miss four or more days of work.[89]

Finally, the ALJ found Dr. Gavino's manipulation opinions inconsistent with the lack of a diagnosed upper extremity impairment. Plaintiff argues that the ALJ failed to appreciate the limitations resulting from her diagnosed fibromyalgia, an error resulting from the ALJ's failure to find fibromyalgia to be a medically determinable impairment at step two. Plaintiff relies on the medical records authored by Dr. James Byrd, who first evaluated Plaintiff for fibromyalgia in July

---

[89] *See* AR 700, 702, 716, 811, 874 (reporting no medication side-effects); AR 710, 715, 733, 799, 807 (reporting constipation as only medication side-effect); AR 738, 752, 757, 776, 783, 787, 791 (reporting nausea and constipation as medication side-effects); AR 803 (reporting nausea, vomiting, constipation as medication side-effects).

2018.[90] At this appointment, Dr. Byrd noted that Plaintiff had greater than 11 tender points but no other evidence of active synovitis and that "[h]er presentation is quite classic for fibromyalgia, but that is a diagnosis of exclusion."[91] Dr. Byrd saw Plaintiff again in September 2018. Again, she was noted to have greater than 11 tender points with no overt evidence of active synovitis.[92] Dr. Byrd found "[h]er presentation remains consistent with fibromyalgia. Laboratory testing is certainly reassuring and I am glad she is on vitamin D supplementation at this point."[93] Dr. Byrd last saw Plaintiff in January 2019, at which point he made the same observations, and again found her presentation consistent with fibromyalgia.[94]

As the ALJ stated, Social Security Ruling 12-2p requires that fibromyalgia be diagnosed by a licensed physician who explains how the patient meets a list of criteria, which includes at least 11 tender points on physical examination that must be found bilaterally (on the left and right sides of the body) and both above

---

[90] AR 761–62.

[91] AR 762.

[92] AR 763–65.

[93] AR 765.

[94] AR 765–67.

and below the waist.[95] The ALJ must also consider whether other disorders could cause the symptoms or signs.[96] Here, the ALJ's finding that the medical evidence did not establish the required criteria is supported by substantial evidence because Dr. Byrd did not identify the location of the greater than 11 tender points. Critically, the ALJ also highlighted that Plaintiff was being treated for chronic pain by a pain clinic, which was addressing her pain complaints that were supported by objective evidence. And as is discussed above, the ALJ rationally weighed the conflicting record and found that the medical observations and findings were inconsistent with Plaintiff's extreme symptom reports of fatigue, pain, and problems concentrating. Plaintiff has not established that the ALJ failed to consider either fibromyalgia at step two or Plaintiff's supported pain and other symptoms during the other sequential steps, including when assessing that Dr. Gavino's manipulation opinions were inconsistent with the objective medical findings.

Plaintiff fails to establish error as to the ALJ's consideration of Dr. Gavino's manipulation and other opinions.

_____

[95] *See also Ford*, 950 F.3d at 1155 n.7 ("Under the social security rules, a physician may diagnose fibromyalgia if the patient meets the 1990 or 2010 criteria established by the American College of Rheumatology (ACR).")

[96] SSR 12-2p.

1

2                3.     <u>Ms. Schrijver</u>

From September to November 2018, Ms. Schrijver counseled Plaintiff, seeing

her a total of five times.[97] In November 2018, Ms. Schrijver completed a disability

form identifying Plaintiff's diagnosis as posttraumatic stress disorder, stating that

Plaintiff "reports experiencing issues with depression, sleep disturbance, social

isolation, excessive worrying, avoidance to traumatic events, flashbacks, easily

irritable, difficulty recalling aspects of events, [and] hypervigilance;" finding her

condition was not permanent and was likely to last 6 months with cognitive

behavioral therapy; opining that Plaintiff was limited to working 1–10 hours a

week with supportive accommodations for anxiety; and stating that she was unable

to assess whether Plaintiff had any lifting or carrying restrictions or whether her

conditions impacted her ability to access services and keep appointments.[98]

The ALJ found Ms. Schrijver's 10-hour-work restriction not persuasive

because Plaintiff sought minimal mental-health treatment, the medical record

indicated improvement, and the mental-status examinations of record were

repeatedly within normal limits.[99]

---

[97] AR 940–41, 983.

[98] AR 975–77.

[99] AR 27.

As indicated above, the ALJ is to consider whether a medical opinion is consistent with the record.[100] Here, substantial evidence supports the ALJ's finding that Ms. Schrijver's opinion is inconsistent with the record. As previously discussed, Plaintiff started and stopped counseling on three occasions during the relevant period.[101] She began therapy in June 2017 and attended four sessions through July 2017[102]; she began again in March 2018 and attended two sessions[103]; and then she began again in September 2018 and attended five sessions before she discontinued therapy in November 2018.[104] Plaintiff argues that the ALJ failed to consider that it was her mental-health symptoms that prevented her from attending counseling. However, the record reflects that Plaintiff consistently attended her physical appointments and took her son to his medical appointments. Plaintiff fails to explain why her depression and anxiety contributed to her ceasing mental-health therapy on three occasions after only obtaining minimal treatment. The ALJ's finding that Ms. Schrijver's opinion is inconsistent with the minimal mental-health treatment that Plaintiff sought is supported by substantial evidence.

---

[100]  20 C.F.R. § 416.920c(b)(2).

[101] AR 633–34, AR 928, 950–51, 932, 940, 983.

[102] AR 633–48.

[103] AR 918–31, 950–51.

[104] AR 932–41, 983–84.

1

2

3

4

       Moreover, substantial evidence supports the ALJ's finding that Plaintiff's mental-status findings were generally normal or indicated improvement and were therefore inconsistent with Ms. Schrijver's opinion that Plaintiff was unable to work more than ten hours a week.[105]

5

      4.   <u>Dr. Phipps</u>

6

7

8

9

10

11

12

13

       Dr. Phipps treated Plaintiff and offered two opinions in October 2017. On the first form, Dr. Phipps opined that Plaintiff could occasionally lift 20 pounds and frequently carry 25 pounds, was not limited with sitting, standing, or walking, did not need to alternate positions to relieve discomfort, did not have manipulative limitations with her upper extremities, would be off task periodically depending on the work, would not need to lie down at work, should never climb stairs, could only occasionally perform other postural activities, and would be absent four or more days per month due to seeing a pain doctor monthly, a counselor every two weeks,

14

_____

15

16

17

18

19

20

21

22

[105] *See* AR 694, 986, 707, 712 (May–Aug. 2017: normal mood, affect, judgment, thought content, behavior although at times seems to be in mild pain); AR 640–42 (June 2017: anxious and depressed with average eye contact, cooperative attitude, full affect); AR 685 (June 2018: appropriate affect and demeanor, recent and remote memory intact, and good insight and judgment); AR 890 (Sept. 2018: anxious); AR 673 (Nov. 2018: normal attention span, thought process, judgment, insight, mood, and affect); AR 681 (Nov. 2018: normal affect and demeanor and good insight and judgment).

23

an ob-gyn every six weeks, a physiatrist every six weeks, and physical therapy.[106] On the second form, Dr. Phipps opined that Plaintiff was limited to light work, which was defined as lifting up to 20 pounds and frequently lifting or carrying up to 10 pounds, walking or standing up to 6 hours each day, and sitting most of the time with occasional pushing and pulling of arm or leg controls; working 11–20 hours per week; and her conditions vary day by due to flares, which could impair her concentration, energy, and stamina, and create a need for periodic absences.[107]

The ALJ found Dr. Phipps' light-work opinion partially persuasive because, while Plaintiff did have physical restrictions consistent with a sedentary RFC with postural and lifting limitations, the medical evidence did not show that her restrictions were as severe as opined by Dr. Phipps. And the ALJ found Dr. Phipps' opinion that Plaintiff would miss four or more days of work per month not persuasive, as it was not supported by meaningful explanation.[108]

Plaintiff argues the ALJ erred because Dr. Phipps did provide a basis for her absenteeism opinion, i.e., the symptoms caused by her fibromyalgia, migraines, cervical disc herniation, low back pain, and dysthymic disorder caused her to miss work. However, as previously discussed, the ALJ's finding that Plaintiff's physical and mental symptoms were predominately mild and did not support an opined

---

[106] AR 618–21.

[107] AR 966–68.

[108] AR 26–27.

1    limitation of missing four or more days of work per month is supported by

2    substantial evidence.

3        Plaintiff accurately highlights that the ALJ did not address Dr. Phipps'

4    opinion that Plaintiff could only work 11–20 hours a week. Yet, when assessing Dr.

5    Gavino's opinions, the ALJ found that the mild to moderate objective medical

6    findings and Plaintiff's ability to be the primary care provider for her young son

7    indicate that she is capable of fulltime work. Therefore, any error in the ALJ's

8    failure to discuss Dr. Phipps' work-hour limitation is harmless because the ALJ

9    discussed in another part of his decision why such an opinion was inconsistent with

10   the objective medical findings and Plaintiff's caretaking of her young son.[109]

11   **C.    Step Five and RFC: Plaintiff fails to establish error.**

12       Plaintiff argues the ALJ failed to properly include all of her limitations into

13   the RFC and the hypothetical presented to the vocational expert. However, this

14   argument depends on her contentions that the ALJ erred in evaluating her

15   symptom reports and the medical opinions described above. Because there was no

16   error, this final argument necessarily fails.[110]

17

18

19

20   [109] *See Carmickle*, 533 F.3d at 1162 (requiring the error to be consequential to the

     disability analysis).

21

22   [110] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (allowing ALJ to

23   restrict hypothetical to those limitations supported by substantial evidence).

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 24th day of February 2022.

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge